UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| MARY PHILLIPS, | Case No. EDCV 06-00306-JWJ |
| Plaintiff, | ORDER REMANDING ACTION FOR FURTHER PROCEEDINGS |
| vs. | |
| MICHAEL J. ASTRUE,[1] Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Mary Phillips seeks review of the decision of defendant, the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income (hereinafter "SSI"). As discussed below, this Court vacates the decision of the Administrative Law Judge and remands this action to the Commissioner for further proceedings.

///

///

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted in place of Commissioner Jo Anne B. Barnhart as defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

# I. SUMMARY OF DISTRICT COURT PROCEEDINGS

On March 22, 2006, plaintiff filed a "Complaint" to review the decision of the Commissioner under the Social Security Act. On April 21, 2006, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before United States Magistrate Judge Jeffrey W. Johnson in the instant action and to have the Magistrate Judge conduct any and all further proceedings in this case and order the entry of final judgment. On August 7, 2006, defendant filed an "Answer to Complaint." On August 8, 2006, defendant filed a copy of the Certified Administrative Record (hereinafter "CAR") of the administrative proceedings. On December 5, 2006, the parties filed a Joint Stipulation addressing their respective claims. This matter is now deemed under submission and ready for decision.

# II. FACTUAL BACKGROUND

**A.  Summary of Administrative Proceedings.**

Plaintiff filed an application for SSI on March 21, 2003, alleging an onset of disability from June 1, 2000. (CAR 66-69.) The application was denied initially and on reconsideration on June 27, 2003 and February 25, 2004. (CAR 31-34, 38-42.) Plaintiff subsequently filed a request for a hearing before an Administrative Law Judge (hereinafter "ALJ"). (CAR 43-44.) A hearing was held on June 10, 2005, before ALJ James S. Carletti, at which plaintiff appeared with representation and testified on her own behalf. (CAR 637-87.) Medical expert Dr. Walter Doren and vocational expert Sandra Fioretti also provided testimony regarding plaintiff at the hearing. (CAR 666-86.) On August 23, 2005, the ALJ issued an opinion denying benefits. (CAR 8-28.) Plaintiff requested review of the ALJ's decision. (CAR 7.) On February 22, 2006, the Appeals Council denied review, making the decision of the ALJ the final decision of the Commissioner in this matter. (CAR 4-6.) See 20

C.F.R. § 416.1400(a)(5).

**B.   Relevant Facts Regarding Plaintiff's Personal History, Medical Condition, and Treatment.**

Plaintiff was born on July 22, 1964 and was 41 years old at the time of the administrative hearing. (CAR 66.) Plaintiff has a high school education and past work experience as a care provider and clerical worker. (CAR 27, 84, 90-93.) She alleges that she became disabled on June 1, 2000 due to a knee injury, poor hearing, a back injury, a neck injury, asthma, and dyslexia. (CAR 78.)

Plaintiff underwent three right knee surgeries. On August 24, 2000, plaintiff underwent arthroscopic debridement and percutaneous lateral release. (CAR 130-31.) On March 13, 2001, plaintiff received arthroscopic debridement, open patellar realignment, and tibial osteotomy. (CAR 209-11.) On September 27, 2001, plaintiff underwent arthroscopic debridement and percutaneous lateral release. (CAR 189-90.)

A May 24, 2002 MRI of the right knee revealed loss of the patellar chondral cartilage and possible tearing along the internal margin of the mid-horn of the lateral meniscus. (CAR 356.) On August 7, 2002, Dr. Ronald Glousman noted that x-rays of the right knee demonstrate a previous tibial osteotomy with questionable osseous healing. (CAR 146.) However, on August 21, 2002, Dr. Glousman noted that a CT scan of the right knee shows complete healing from the tibial osteotomy. (CAR 142.)

On April 30, 2002, Dr. Patrick Brennen diagnosed plaintiff with fibromyalgia by history. (CAR 371.) On March 5, 2004, Dr. Jeffrey Hirsch observed that plaintiff has multiple tender points and negative control points, consistent with the diagnosis of fibromyalgia. (CAR 598.)

A May 24, 2002 MRI of the lumbar spine showed a 2 mm posterior bulge at L5-S1, and a 2 mm posterior central and 3 mm right posterolateral

protrusion at L4-5.  (CAR 354.)

A December 9, 2002 MRI of the cervical spine revealed a 2 mm bulge at C5-6 and 2.5 mm bulges at C4-5 and C6-7.  (CAR 297-98.)  There was minimal spinal canal stenosis, without cord compression, at C6-7.  (CAR 297-98.)

On April 4, 2003, Dr. Vance Johnson diagnosed plaintiff with lumbar radiculitis without denervation.  (CAR 391.)

On April 9, 2003, Dr. Hirsch noted that diagnostic studies suggest mild restrictive lung disease.  (CAR 169.)

On June 27, 2003, Dr. Joel Ross, a state agency physician, completed a Physical Residual Functional Capacity Assessment form.  (CAR 404-11.)  Dr. Ross opined that plaintiff is limited as follows:  can lift and/or carry ten pounds occasionally and frequently; can stand and/or walk for at least two hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; limited in pushing and/or pulling with the lower extremities; can occasionally stoop; can never climb, balance, kneel, crouch, or crawl; can reach in all directions frequently but cannot reach overhead; must avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation; and must avoid all exposure to workplace hazards.  (CAR 405-089.)  These findings were affirmed by another state agency physician, Dr. Gary Miya, on December 30, 2003.  (CAR 411-13.)

On August 12, 2003, Dr. Garry Miller diagnosed plaintiff as having cognitive disorder, not otherwise specified, post concussive syndrome, and depressive disorder, not otherwise specified.  (CAR 236.)  On March 1, 2004, Dr. Paul DeSilva noted that plaintiff experiences moderate depression and anxiety.  (CAR 613.)  He also noted that plaintiff experiences cognitive and memory problems.  (CAR 613.)

Plaintiff's sister-in-law, Claudia Igarik, completed a third party function report on November 20, 2003. (CAR 102-09.) She noted that she has known plaintiff for twenty years and visits plaintiff on a daily basis. Ms. Igarik reported that she assists plaintiff in numerous ways, including driving plaintiff to the doctor's office, helping plaintiff with "needs" and "chores" around the house, helping plaintiff with "forms" and "paper work that needs to be filled out," and providing plaintiff "encouragement due to severe depression and anger over [her] condition." (CAR 102.) Mr. Igarik made the following observations in regard to plaintiff's daily functioning: plaintiff has difficulty maintaining her personal care due to her inability to lift her arms over her head or bend over without pain (CAR 103); plaintiff needs to be reminded of what medication to take and when (CAR 104); plaintiff is able to prepare "very simple" snacks and sandwiches (CAR 104); plaintiff is able to do "very light chores" such as dusting, dishes, and laundry (CAR 104); plaintiff is unable to go outside by herself because she falls or trips frequently and gets lost easily (CAR 105); plaintiff is unable to drive (CAR 105); plaintiff is unable to handle a savings account or count change (CAR 105); with assistance, plaintiff is able to play bills and use checkbooks or money orders (CAR 105); plaintiff reads often but has difficulty comprehending or retaining information (CAR 106); plaintiff is very short-tempered due to pain and loss of cognitive skills (CAR 106); plaintiff does not go to or participate in any activities or functions (CAR 107); plaintiff can walk "several yards" before needing to rest for five to ten minutes (CAR 107); plaintiff is unable to handle stress (CAR 108); and plaintiff cannot handle changes in routine (CAR 108).

On December 4, 2003, Dr. Brennen diagnosed plaintiff with pain disorder. (CAR 632.)

On February 20, 2004, Dr. Henry Amado, a state agency physician, completed a Psychiatric Review Technique form and a Mental Residual

1 Functional Capacity Assessment form.  (CAR 416-29, 430-32.)  Dr. Amado
2 diagnosed plaintiff with cognitive disorder, not otherwise specified, slow
3 learning disability by history; depressive disorder, not otherwise specified;
4 anxiety disorder, not otherwise specified; and pain disorder.  (417-25.)  He
5 found that plaintiff has mild restriction of activities of daily living, moderate
6 difficulties with social functioning, and moderate difficulties with
7 concentration, persistence, or pace.  (CAR 426.)  Dr. Amado further opined
8 that plaintiff can sustain simple repetitive tasks with adequate pace and
9 persistence.  (CAR 432.)  He noted, however, that plaintiff cannot work with
10 the public.  (CAR 432.)

11      On March 5, 2004, Dr. Hirsch diagnosed plaintiff with obesity.  (CAR
12 605.)  Similarly, on July 1, 2004, Dr. Roy Robinson diagnosed plaintiff with
13 clinical obesity.  (CAR 551.)

14      On May 26, 2004, Dr. Neil Jones observed diminished sensation in both
15 hands and diagnosed bilateral carpal tunnel syndrome.  (CAR 560.)  Dr. Jones
16 opined that plaintiff should consider undergoing carpal tunnel release surgery.
17 (CAR 560.)  On November 4, 2004, Dr. Jones diagnosed plaintiff with status
18 post bilateral carpal tunnel releases.  (CAR 493.)

19 **C.**    **The Hearing Before the Administrative Law Judge**.

20     1.    <u>Plaintiff's Testimony</u>

21      Plaintiff appeared with counsel at the June 10, 2005 hearing and testified
22 on her own behalf.  (CAR 637-87.)  Plaintiff testified that she was five feet,
23 two and a half inches tall and weighed approximately 214 pounds.  (CAR 642.)
24 She asserted that he experiences pain in her hands, right knee, neck, mid-back,
25 right elbow, and right shoulder.  (CAR 645-46, 653.)  Plaintiff testified that
26 she uses a cane because her right knee gives out, which causes her to lose her
27 balance.  (CAR 649-50.)  She reported that she has had three surgeries on the
28 right knee and carpal tunnel surgeries on both hands.  (CAR 650-51, 655.)

- 6 -

1    Plaintiff also testified that she suffers from headaches, anxiety attacks,
2 asthma, poor hearing, poor sleep, depression, and difficulty comprehending and
3 retaining information. (CAR 647, 656-62.) She stated that she suffers from
4 headaches "almost once a day" and from anxiety attacks "three times a
5 month." (CAR 647, 662.) Plaintiff added that her pain causes her to remain
6 in bed all day about twice a month. (CAR 658-59.)
7    Plaintiff claimed that she can stand for about 10 minutes, sit for about
8 10 minutes, and lift a half-gallon of milk. (CAR 663.) She asserted that she
9 cannot go out for walks because she is "not completely stable on [her] feet."
10 (CAR 664.)
11    2.    <u>Medical Expert's Testimony</u>
12    Medical expert Dr. Walter Doren testified via phone at the June 10,
13 2005 hearing. (CAR 666-80.) Dr. Doren summarized plaintiff's medical
14 history as follows: plaintiff had three right knee surgeries; on August 7, 2002,
15 plaintiff displayed slight loss of strength in the right quadriceps; a May 24,
16 2002 MRI of the right knee showed loss of the patellar articular cartilage and
17 possible tearing along the internal margin of the lateral meniscus; a May 24,
18 2002 MRI of the lumber spine showed a 2 mm posterior bulge at L5-S1 and a
19 2 mm posterior central and 3 mm right posterolateral protrusion at L4-5; a
20 May 10, 2004 lumbar discogram revealed only normal findings; on April 4,
21 2003, plaintiff was diagnosed with lumbar radiculitis without denervation; a
22 December 9, 2002 MRI of the cervical spine showed 2 mm bulges at C4-5, C5-
23 6, and C6-6, which indented the anterior thecal sac but not the spinal cord; on
24 May 26, 2004, plaintiff displayed diminished sensation and was diagnosed
25 with bilateral carpal tunnel syndrome; and on November 4, 2004, plaintiff was
26 diagnosed with status post bilateral carpal tunnel releases. (CAR 667-78.)
27    Thereafter, Dr. Doren endorsed the findings of the state agency
28 physicians, who had opined that plaintiff: can lift/carry ten pounds

occasionally and frequently; can stand/walk for at least two hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; is limited in her ability to push/pull with the legs; can stoop occasionally; cannot climb, balance, kneel, crouch, or crawl; can reach in all directions frequently but cannot reach overhead; must avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, and gases; and must avoid all exposure to workplace hazards. (CAR 676-77, 679.)

### 3. Vocational Expert's Testimony

Vocational expert (hereinafter "VE") Sandra Fioretti also testified before the ALJ. (CAR 680-86.) The ALJ presented Ms. Fioretti with a hypothetical individual of plaintiff's vocational background, age, and education, who has the following work restrictions: can lift/carry ten pounds occasionally and frequently; can stand/walk for at least two hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; limited in her ability to push/pull with the legs; can stoop occasionally; cannot climb, balance, kneel, crouch, or crawl; can reach in all directions frequently but cannot reach overhead; must avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, and gases; and must avoid all exposure to workplace hazards; and can perform nonpublic, simple, repetitive tasks. (CAR 685.) Ms. Fioretti testified that such a person could not perform plaintiff's past work, but would be capable of performing work as an assembler in buttons/notions and optical assembler. (CAR 685-86.) Ms. Fioretti further stated that the number of jobs available as an assembler in buttons/notions or optical assembler would be eroded by 50% because of the hypothetical individual's manipulative (i.e., no overhead reaching) and postural limitations (i.e., no climbing, balancing, kneeling, crouching, or crawling). (CAR 685-86.)

The ALJ then presented Ms. Fioretti with a hypothetical individual who has all the limitations as testified to by plaintiff (i.e., can stand for about 10

minutes, sit for about 10 minutes, and lift a half-gallon of milk, etc.). (CAR 686.) Ms. Fioretti testified that such a person cannot perform any work in the economy. (CAR 686.)

**D.    The ALJ's Decision.**

On August 23, 2005, the ALJ issued a decision denying plaintiff's application for SSI. (CAR 8-28.) The ALJ determined that plaintiff suffers from severe impairments consisting of degenerative lumbar disc disease; degenerative cervical disc disease; patellofemoral arthritis of the right knee; status post three arthroscopic debridements of the right knee; asthma; obesity; bilateral carpal tunnel syndrome, status post surgical releases; fibromyalgia; an organic mental disorder, specifically a memory impairment; depression, not otherwise specified; anxiety disorder, not otherwise specified; and a somatoform disorder, specifically a pain disorder. (CAR 26.) However, the ALJ concluded that plaintiff's impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (CAR 26.) The ALJ also found that plaintiff's subjective complaints of impairment are not fully credible. (CAR 27.) The ALJ opined to plaintiff's residual functional capacity (hereinafter "RFC") as follows: can lift/carry ten pounds occasionally and frequently; can stand/walk for at least two hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; limited in her ability to push/pull with the legs; can stoop occasionally; cannot climb, balance, kneel, crouch, or crawl; can reach in all directions frequently but cannot reach overhead; must avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, and gases; must avoid all exposure to workplace hazards; and can perform nonpublic, simple, repetitive tasks. (CAR 26-27.)

The ALJ found that plaintiff is unable to perform her past relevant work as a care provider or clerical worker. (CAR 27.) The ALJ determined that

1  plaintiff is a "younger person" and has a "high school education."  (CAR 27.)
2  The ALJ found that considering plaintiff's age, education, and RFC, there are
3  jobs that exist in significant number in the national economy that plaintiff can
4  perform such as that of an assembler of buttons/notions and optical assembler.
5  (CAR 27.)  Accordingly, the ALJ concluded that plaintiff has not been under a
6  "disability" as defined in the Social Security Act.  (CAR 28.)

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405 (g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  See McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a Commissioner's findings, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.
///

## IV.  THE FIVE-STEP ANALYSIS

**A.  Initial Five-Step Analysis.**

A disability claimant must show that a medically determinable physical or mental impairment prevents the claimant from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months.  Reddick, 157 F.3d at 721; 42 U.S.C. § 423 (d)(1)(A).

Disability claims are evaluated according to the five-step procedure described below.  See Bowen v. Yucker, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Reddick, 157 F.3d at 721; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); 20 C.F.R §§ 404.1520, 416.920.

**Step one:**  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

**Step two:** Does the claimant have a "severe impairment"?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

**Step three:**  Does the claimant's impairment or combination of impairments meet or equal an impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (hereinafter "the Listings")?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

**Step four:**  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

**Step five:**  Does the claimant have the RFC to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  Lester, 81 F.3d at 828 n.5.

"Severe" (at step two) means any impairment or combination of impairments that significantly limits the physical or mental ability to perform basic work activities.  RFC is what a claimant can still do despite existing

- 11 -

1  "exertional" (i.e., strength related) and "nonexertional" limitations. Cooper v.
2  Sullivan, 880 F.2d 1152, 1155 ns.5-6 (9th Cir. 1989). Nonexertional
3  limitations restrict ability to work without directly limiting strength, and
4  include mental, sensory, postural, manipulative and environmental limitations.
5  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper 880 F.2d at 1155
6  n.7; 20 C.F.R. §404.1569a(c).[2]

7  A claimant has the burden (through step four) of proving inability to
8  perform past relevant work. Reddick, 157 F.3d at 721; Drouin v. Sullivan, 966
9  F.2d 1255, 1257 (9th Cir. 1992). If this burden is met, a prima facie case of
10 disability is established and the burden shifts to the Commissioner (step five)
11 to establish that the claimant can perform alternative work. Reddick, 157 F.3d
12 at 721; Drouin, 966 F.2d at 1257; 20 C.F.R. §§ 404.1520, 416.920. The
13 Commissioner can meet this burden by reference to the Medical-Vocational
14 Guidelines ("Grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2, or by
15 relying on vocational expert ("VE") testimony. Osenbrock, 240 F.3d at 1162
16 (9th Cir. 2001) (citing Desrosiers v. Secretary of Health & Human Servs., 846
17 F.2d 573, 576-77 (9th Cir. 1988)). If VE testimony is used, "the VE must
18 identify a specific job or jobs in the national economy having requirements that
19 the claimant's physical and mental abilities and vocational qualifications would
20 satisfy." Osenbrock, 240 F.3d at 1162-63.

21 ///
22 ///

---

[2] Nonexertional limitations include difficulty in one or more of the following: functioning because of nervousness, anxiety or depression, maintaining attention or concentration; understanding instructions; seeing or hearing, tolerating physical features of a work setting; and manipulative or postural functions (e.g. reaching, handling, stooping or crouching). See 20 C.F.R. § 404.1569a(c)(1). Pain may be either an exertional or nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

**B.     Additional Five-Step Sequential Evaluation for Mental Impairments.**

Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must supplement the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. Maier v. Commissioner of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). The relevant regulations establish another five-step sequential evaluation procedure to be employed in evaluating mental impairments. Id. The procedure requires the evaluator to perform the following five steps:

**Step one:** Determine whether a mental impairment exists by recording pertinent symptoms and limitations;

**Step two:** Determine whether "certain medical findings which have been found especially relevant to the ability to work are present or absent";

**Step three:** Determine whether the impairment is severe by rating the degree of functional loss resulting from the impairment;

**Step four:** Determine whether the impairment, or a combination of impairments, meet or equal a mental disorder listed in 20 C.F.R. pt. 404 subpt. P, Appendix I; and

**Step five:** Complete a mental RFC assessment. Maier, 154 F.3d at 914-15 (citing 20 C.F.R. § 416.920a).

When dealing with alleged mental disabilities, the inquiry at step three has two parts. In the first part, (Part A), the ALJ must determine whether there is evidence to "medically substantiate the presence of a mental disorder." 20 C.F.R. pt. 404 subpt. P, Appendix I at § 12.00A. When making this initial determination, the ALJ can rely only on "medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings." Id. at § 12.00B; Schneider v. Commissioner of the Soc. Sec. Admin., 223 F.3d 968,

974 (9th Cir. 2000).

In the second part, (Part B), the ALJ must determine whether the "severity" of the claimant's "functional limitations" are "incompatible with the ability to work." 20 C.F.R. pt. 404 subpt. P, Appendix I at § 12.00A; Schneider, 223 F.3d at 974. The ALJ makes this determination by ranking the severity of the claimant's deficiencies (e.g. non, slight, moderate, marked, extreme) in four different categories (e.g. daily living; social functioning; concentration, persistence, or pace; and episodes of deterioration). If the ALJ finds that a claimant's functional limitations are at the extreme or marked level in two of the four categories, then the claimant satisfies Part B [of the Listing]. See 20 C.F.R. pt. 404 subpt. P, Appendix I at § 12.04B; Schneider, 223 F.3d at 975.

## V.   DISCUSSION

**A.   The ALJ's Evaluation.**

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (CAR 26.) The ALJ determined at step two that plaintiff suffers from an impairment or a combination of impairments considered to be "severe." (CAR 26.) At step three, the ALJ found that plaintiff's impairments do not meet or medically equal one of the impairments in the Listings. (CAR 26.) At step four, the ALJ determined that plaintiff is not able to perform any of her past relevant work. (CAR 27.) At step five, the ALJ concluded that plaintiff has the RFC to perform a limited range of sedentary work, including employment as an assembler of buttons/notions and optical assembler. (CAR 27.) Thus, the ALJ concluded that plaintiff is not disabled as defined in the Social Security Act. (CAR 28.)

The parties have stipulated that the following issues are in dispute, to

wit:[3]

1. Whether the ALJ accepted jobs cited by the vocational expert that are not consistent with plaintiff's RFC. (Joint Stipulation, p. 2.)
2. Whether the ALJ properly considered the lay witness testimony. (Joint Stipulation, p. 2.)

**B. Lay Witness Testimony.**

Plaintiff argues that the ALJ failed to properly address the statements of her sister-in-law, Claudia Igarik. (Joint Stipulation, p. 10-11.)

An ALJ is required to consider lay witness testimony concerning a claimant's ability to work. Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony concerning a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence and cannot be disregarded without comment. Id. (citations omitted). For this evidence to be discounted, the ALJ must give reasons that are germane to the witness. Id.

Ms. Igarik, who purportedly observed plaintiff on a daily basis, completed a questionnaire that chronicles some of plaintiff's difficulties as a result of her various impairments. (CAR 102-09.) Ms. Igarik reported among other things: plaintiff needs to be reminded of what medications to take and when; is unable to go outside by herself; has difficulty handling her finances; has difficulty comprehending and retaining information; is very short-tempered, and can walk only "several yards" before needing rest. (CAR 103-07.) Given the length of Ms. Igarik's relationship with plaintiff, her insights are highly probative of plaintiff's level of functioning and credibility.

The ALJ, however, failed to discuss Ms. Igarik's testimony. If her

---

[3] The claims raised by plaintiff will be addressed in an order different from how they have been presented.

- 15 -

testimony were fully credited, the ALJ could not have arrived at the conclusion that plaintiff had the RFC to work. See Stout, 454 F.3d at 1056 (where the ALJ erred by failing to properly assess competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination). The ALJ's failure to explain why he rejected Ms. Igarik's statements is therefore erroneous. For this reason, the case is remanded. On remand, the ALJ should acknowledge that Ms. Igarik provided testimony and explain why it is accepted or rejected.

**C.    Alternative Occupations.**

On remand, the ALJ's assessment of plaintiff's RFC may change, because he must reevaluate it following his assessment of the lay witness testimony. If this finding does change, it will necessitate further testimony from a vocational expert and a new finding as to whether plaintiff could perform other work in the national economy. See Reddick, 157 F.3d at 729 (an ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations); Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988) (in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).

Therefore, because the ultimate finding regarding plaintiff's RFC may change and additional testimony from a vocational expert may be required, the Court does not reach the first issue raised by plaintiff (i.e., regarding whether the ALJ erred in accepting the jobs cited by the vocational expert).[4]

---

[4] Upon remand, the ALJ should note that he may rely on a vocational expert's testimony that contradicts the Dictionary of Occupational Titles, in proving that a claimant is able to make an adjustment to other work, if the record contains persuasive evidence to support the deviation. See Johnson v. Shalala, 60 F.3d 1428,

- 16 -

**D.     Remedy.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  <u>Id.</u>

Here, the Court has concluded that the ALJ failed to properly assess lay witness testimony and, therefore, remand is appropriate.  If the ALJ chooses to reject such testimony, the ALJ must provide germane reasons for doing so.  Furthermore, if necessary, the ALJ should require further evaluation of plaintiff in order to assess the impact of her impairments on her ability to work.

## ORDER

Accordingly, IT IS HEREBY ORDERED that this action is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

///
///
///
///
///

---

1435 (9th Cir. 1995).

- 17 -

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this order and the Judgment herein on all parties or their counsel.

DATED: September 28, 2007

_____/s/_____
JEFFREY W. JOHNSON
United States Magistrate Judge